UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

TIMOTHY MICHAEL PECK,

   Plaintiff,

  vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

Case No:  C 09-2600 SBA

**ORDER RE: CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

Dkt. No. 14, 16

  Plaintiff Timothy Peck ("Plaintiff" or "Peck") filed the instant action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "the Commissioner").  Peck alleges that he was improperly denied supplemental security income disability benefits.  The parties are presently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. 14) and Defendant's Cross-Motion for Summary Judgment (Dkt. 16).  Having read and considered the papers submitted, and having reviewed the record, the Court hereby GRANTS Plaintiff's motion and DENIES Defendant's motion.  The Court remands the matter to the Commissioner for the immediate award of benefits.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

  On October 25, 2006, Plaintiff filed protective applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  (Administrative Record ("AR") 103-106, 107-109.)  The Commissioner denied both claims on January 23, 2007.  (AR 68-71.)  Plaintiff filed a Request for

Reconsideration on March 26, 2007.  (AR 72.)  On July 16, 2007, the Commissioner upheld the denial of benefits.  (AR 75-81.)

On July 19, 2007, Plaintiff submitted a Request for Hearing by Administrative Law Judge ("ALJ").  (AR 82.)  After conducting a hearing, at which Plaintiff was represented by attorney David Linden, the ALJ issued his decision on February 13, 2009.  (AR 12-23.) The ALJ determined that Plaintiff is not disabled, and is therefore, ineligible for disability benefits.  (AR 23.)  The decision became final on or about May 1, 2009, when the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)  Plaintiff filed this action on June 11, 2009, seeking review of the Commissioner's determination that Plaintiff is not disabled. The parties have filed cross-motions for summary judgment.

**B.   FACTUAL SUMMARY**

**1.   The Accident**

Plaintiff was born July 31, 1973.  (AR 103.)  At age 16, he was struck by a car and required medical treatment.  (AR 222.)  The medical records documenting Plaintiff's initial injuries and corrective surgeries are dated November 17, 1989 through December 14, 1989. (AR 184-225.)  As a result of the accident, Plaintiff incurred closed comminuted left tibial shaft (i.e., shinbone) and fibular shaft (i.e., calf bone) fractures.  (AR 190.)  He also sustained a closed head injury with an oblique skull fracture.  (AR 187.)  As a result of that trauma, Plaintiff suffered a hemorrhagic brain contusion (i.e., bruising on the brain), principally over the right hemisphere, and a left-side hemiparesis (i.e., slight paralysis or muscle weakness).  (AR 184, 186-187.)

**2.   Medical Examination**

On November 21, 2006, Plaintiff, at the request of the Commissioner, underwent a comprehensive orthopedic examination by Michael Bass, M.D.  (AR 226-230.)  Dr. Bass diagnosed Plaintiff with the following:  (1) status post traumatic tibial and fibular fractures with surgical repairs and subsequent chronic pain syndrome in the left distal tibial region; (2) mild left hemiparesis secondary to old, subdural hematoma (i.e. collection of blood on the brain) and craniotomy (i.e. surgical procedure to open the skull); and (3) chronic

headaches secondary to subdural hematoma and craniotomy at the age of 16 years.  (AR 220.)

On December 15, 2006, Plaintiff, again at the request of the Commissioner, underwent a psychological evaluation by Philip Cushman, Ph.D. for an assessment of "cognitive functioning."  (AR 231-236.)  Dr. Cushman found that Plaintiff showed deficient performance in "sustained attention and concentration."  (AR 234.)  Dr. Cushman opined that this finding was "statistically and clinically significant and tends to reflect the damage from the head injury."  (AR 234.)  He also found that "Timothy has moderately impaired functioning due [to] slowness and error," and "can appear to have slower than normal thinking speed and will be more error prone and slow on more complex tasks." (AR 235.)

Following his evaluation, Dr. Cushman diagnosed Plaintiff with dementia due to head trauma, and provisional chronic pain disorder associated with psychological factors and a general medical condition.  (AR 235.)[1]  Plaintiff's Global Assessment of Functioning ("GAF"), which measures a person's overall ability to function, was 55.[2]  (AR 236.)  Based on that diagnosis, Dr. Cushman assessed Plaintiff's mental residual functional capacity as follows:

> [Timothy] is capable of working a normal workday and work week, although at times he may show easy fatigue if there is a lot of interpersonal interaction involved.  Special or additional supervision may be needed to help him manage interpersonal relationships in a work setting.  He is capable of following simple and complex verbal instructions from supervisors.  He may, at times, however, have difficulties getting along with supervisors, coworkers, and the general public.  He may need assistance dealing with the usual stressors encountered in a competitive work environment.

---

[1] The diagnosis is recorded as "R/O" (i.e. "rule out").  This terminology was replaced in DSM-IV with "Provisional Diagnosis."  Carlton Munson, The Mental Health Diagnostic Desk Reference, 2nd ed., at 78.

[2] This correlates to "moderate" symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  (See AR 51.)

### 3.    State Agency Review

On January 18, 2007, a psychiatric review form was completed by David Gross, M.D., the non-examining, state agency psychiatrist.  (AR 242-252.)  Dr. Gross indicated that Plaintiff had an "organic mental disorder" and "dementia due to head trauma."  (AR 242-243.)  Dr. Gross found "moderate" functional limitations in Plaintiff's "activities of daily living," "social functioning," and "concentration, persistence, or pace."  (AR 250.)

### 4.    Expert Testimony

The ALJ also requested testimony from Lloyd Meadow, Ph.D., as a non-evaluating psychological medial expert ("ME").  (AR 47-56.)  The ME summarized for the ALJ the substance of the report submitted by Dr. Cushman.  (AR 48-51.)  The ME stated that a GAF of 55 was "a pretty accurate assessment."  (AR 51.)  The ME confirmed Plaintiff's moderate impairments in "concentration, persistence, and pace," and "dealing with fellow employees, the public and supervisors," stressing "particularly with supervisors."  (AR 54, 57.)

### 5.    Plaintiff's Testimony

At the request of the Commissioner, Plaintiff completed an adult function report.  (AR 162-169.)  Plaintiff reported that he experiences leg pain and headaches, which keep him from sleeping and prevent him from sitting or standing for extended periods.  (AR 163.)  When asked to identify any abilities affected by his "illness, injuries, or condition," Plaintiff checked the boxes for, inter alia, memory, concentration, understanding, following instructions, and getting along with others.  (AR 167.)

Plaintiff also testified at his ALJ hearing (AR 35-47), as follows:  His main difficulty with pizza delivery was leg pain.  Because interactions with customers were brief, limited exchanges, that aspect of the work did not pose a problem.  (AR 35.)  Plaintiff did report difficulty with co-workers, in particular that their "mouthing off" made him so angry that he would leave.  (AR 36.)  Plaintiff stated that the main troubles causing him to "go from job to job" were his "memory" and his "lack of accepting people that discipline [him]."  (AR 40.)

Plaintiff also testified that he had been prescribed medications, including Gabapentin, Lyrica, and Trazodone, which he described as medication for depression and pain.  (AR 43.)  He stated that he has trouble sleeping because of pain, but that the Trazadone helps in that respect.  (AR 43.)  He stated that the Gabapentin and Lyrica were not effective in addressing his anxiety or controlling his temper.  (AR 44-45.)  Plaintiff testified that he took all of the medication he was given, but had no refills and did not want them because he does not like pills.  (AR 43-44.)

Plaintiff noted that he continues to see a counselor and seek medical treatment from an orthopedist.  (AR 43-45.)  In early 2007, he opted to have additional surgery to remove the rod from his leg.  (AR 38.)  When asked if he underwent surgery because of worsening pain or symptoms, Plaintiff responded, "I thought it would be better if they took it out.  I'd had it for like -- 17 years.  So they took the pins out, three pins, and they couldn't get the rod out so now, ever since then it's just been worse."  (AR 38.)

### 6.   Lay Witness Testimony

At the request of the Commissioner, Plaintiff's mother, Jane Peck, completed a third party function report regarding the adult Plaintiff.  (AR 154-161.)  Ms. Peck confirmed Plaintiff's chronic leg pain, headaches, sleeplessness, inability to concentrate, and inability to sit or stand for extended periods.  (AR 155.)  In terms of identifying abilities affected by Plaintiff's "illness, injuries, or condition" Ms. Peck noted, inter alia, that he has difficulty standing, sitting, memory, concentration, understanding, and getting along with others. (AR 159.)  Ms. Peck indicated that Plaintiff quit his last job because of an unspecified "problem with a co-worker."  (AR 160.)  She also testified at the hearing (AR 31-35), stating Plaintiff "couldn't handle" people at his previous job.  (AR 34-35.)

### 7.   Vocational Expert Testimony

The ALJ called Lynda Berkley to testify as a vocational expert ("VE").  (AR 57-63.) The first vocational hypothetical posed by the ALJ was whether Plaintiff could perform his prior jobs given the following limitations:  (1) he is an individual limited to sedentary work, with a sit or stand option every hour; (2) a limitation to unskilled work; and (3) a limitation

to no more than occasional contact with the public.  (AR 60.)  The VE testified that Plaintiff could not perform past relevant work under those limitations, but was able to identify two unskilled sedentary occupations that Plaintiff could perform (i.e., Stone Setter, Jewelry, Dictionary of Occupational Titles ("DOT") # 735.687-034 and Final Assembler, Optical Goods, DOT # 713.687-018; AR 61.)

The second vocational hypothetical, posed by the ALJ, incorporated the three limitations (1) through (3) above, and added a limitation of no more than "occasional contact with co-workers and supervisors."  (AR 61-62.)  "Occasional" was defined as a maximum of one-third of the time.  (AR 61-62.)  The VE testified that those limitations would "eliminate all jobs that are unskilled . . . because contact with supervisors on an unskilled job is frequent."  (AR 62.)

The third vocational hypothetical, posed by Plaintiff's attorney, incorporated only limitations (1) and (2) above, and added moderate limitations in (a) concentration, persistence, and pace; (b) activities of daily living; and (c) maintaining social functioning. (AR 62-63.)  The VE testified that those limitations would "eliminate all work."  (AR 63.) The VE clarified that, by itself, a moderate limitation in concentration, persistence, or pace on an unskilled job "would not allow the person to complete the requirements of the job." (AR 63.)

### 8.      Determination by the Administrative Law Judge

The ALJ found that Plaintiff has severe impairments, including leg and head injuries, an affective disorder, and a cognitive disorder.  (AR 17.)  Regarding functional restrictions, the ALJ found that Plaintiff has moderate limitations in "activities of daily living" and "concentration, persistence, or pace," as well as a mild to moderate limitation in "social functioning."  (AR 19.)  The ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work, with a sit or stand option every 60 minutes, and to perform "simple, repetitive tasks equating to unskilled work."  (AR 20.)

## II.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court has authority to review a Commissioner's decision to deny disability benefits to a claimant.  The Court's review is limited to an adjudication of whether the Commissioner's findings are supported by substantial evidence and based upon the proper legal standards.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  Substantial evidence is more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Desrosiers v. Sec. of HHS, 846 F.2d 573, 575-76 (9th Cir. 1988).  The Court must "review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

 "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of this court."  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Further proceedings are appropriate where additional proceedings could remedy defects in the Commissioner's decision.  Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  If no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision, a remand for benefits is appropriate.  Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

## III.      DISCUSSION

### A.      THE FIVE-STEP DISABILITY DETERMINATION PROCESS

Under Title II of the Social Security Act, disability insurance benefits are available when an eligible claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).[3]

The ALJ engages in a five-step sequential evaluation process to determine whether a

claimant is disabled under the Act.  20 C.F.R. § 404.1520(a).  The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520,

416.920).

The claimant bears the burden of establishing a prima facie case of disability.

Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).  "Once the claimant establishes a

prima facie case, the burden then shifts to the Commissioner to show that the claimant can

perform other types of work that exist in the national economy, given [the claimant's]

residual functional capacity, age, education, and work experience."  Id. (internal quotation

and citation omitted).

The ALJ employed the five-step sequential framework in assessing Plaintiff's

disability.  At step 1, the ALJ determined that Plaintiff was not engaged in substantial

gainful activity.  (AR 17.)  At step 2 the ALJ determined that Plaintiff suffers from "severe"

---

[3] Because the Title II and Title XVI regulations relevant hereto are identical, only the Title II regulations are cited herein.

impairments as a result of leg injuries and head trauma, including affective and cognitive disorders.  (AR 17.)  At step 3, the ALJ determined that the impairments do not equal a listed impairment.  (AR 18.)  At step 4, the ALJ evaluated Plaintiff's RFC, and found that Plaintiff could perform sedentary work.  He stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except that I find that his medical history and subjective allegations warrant a sit or stand option every 60 minutes.  As discussed above, he is able to perform simple, repetitive tasks equating to unskilled work.

(AR 20.)  The ALJ then determined that Plaintiff is unable to perform past relevant work.  (AR 21.)  At step 5 however, the ALJ determined that Plaintiff is able to perform other jobs in the national economy.  (AR 22.)  Thus, the ALJ concluded that Plaintiff is "not disabled."  (AR 22.)

Plaintiff presently requests that this Court reverse and set aside the Commissioner's decision, and remand the matter for immediate payment of benefits on the following grounds:  (1) the ALJ improperly evaluated Plaintiff's mental impairments; (2) the RFC fails to capture Plaintiff's documented impairments; (3) the finding on "social functioning" is not supported by substantial evidence; (4) the ALJ improperly discredited testimony of the Plaintiff; (5) the ALJ improperly rejected medical opinions; (6) the ALJ improperly rejected lay witness testimony; and (7) the disability determination relies on a defective vocational hypothetical.

For clarity, Plaintiff's claims will be addressed in three phases:  (1) whether the ALJ properly considered and credited relevant testimony; (2) whether the ALJ properly determined Plaintiff's RFC; and (3) whether the ALJ properly assessed evidence provided by the VE.

### B.    FAILURE TO PROPERLY CONSIDER OR CREDIT RELEVANT TESTIMONY

RFC measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th

Cir. 1989).[4]  An RFC assessment must be based on all of the relevant evidence in the case record, including medical history and laboratory findings, the effects of treatment, reports of daily activities, *lay evidence, medical source statements, effects of symptoms (including pain) that are reasonably attributed to a medically determinable impairment*, evidence of attempts to work, the need for a structured living environment, and available work evaluations.  SSR 96-8p, 1996 WL 374184 at *5; 20 C.F.R. §§ 404.1513, 404.1529.

### 1.    Consideration of Lay Witness Testimony

As noted, Jane Peck, Plaintiff's mother, completed a third party function report and provided testimony at the hearing before the ALJ.  Plaintiff asserts that the ALJ failed to properly consider her lay witness testimony.  (Pl.'s Mot. at 24.)  He further asserts that this is reversible error, and that Ms. Peck's testimony, if credited, establishes that the Plaintiff is disabled.  (Id.)  The Commissioner responds only that the ALJ demonstrated proper consideration of lay testimony by articulating in the decision:  "I have considered opinion evidence in accordance with the requirements of [the relevant regulations]."  (Def.'s Mot. at 8.)

"An ALJ is required to account for all lay witness testimony in the decision of his or her findings."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (citation omitted).  Lay testimony regarding the claimant's symptoms or the affect of impairment on the claimant's ability to work is considered competent evidence and "cannot be disregarded without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); see also Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) (noting that an ALJ wishing to discount lay testimony must give "reasons that are germane to each witness").  "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can

---

[4] Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

1    confidently conclude that no reasonable ALJ, when fully crediting the testimony, could

2    have reached a different disability determination." Stout, 454 F.3d at 1055-56.

3         Here, the ALJ's conclusory statement fails to pass muster under controlling Ninth

4    Circuit precedent.  Rather than articulating the reasons for rejecting Ms. Peck's testimony,

5    the ALJ stated, without exposition, that he was incorporating testimony offered during the

6    hearing, notwithstanding the fact that such testimony contradicted his conclusion.

7    However, the Court finds such error harmless.  The ALJ did not disregard any competent

8    lay testimony favorable to Plaintiff.  Moreover, Ms. Peck is incompetent to provide

9    testimony regarding Plaintiff's professional capacity since such testimony is based on

10   hearsay and was made without the benefit of direct observation.  (AR 34-35.)  While she

11   could properly offer testimony on matters such as Plaintiff's daily activities and his level of

12   functioning, such testimony is of marginal value given only she saw him only ten to twelve

13   hours per week and did not interact with him on a daily basis.  (AR 154, 160.)  Moreover,

14   had the ALJ considered her testimony, it would have been merely cumulative of Plaintiff's

15   own testimony.  Even if fully credited, Ms. Peck's testimony would not justify a different

16   disability determination.  Thus, the Court finds no reversible error on the part of the ALJ

17   with respect to this issue.

18              **2.      Assessment of Plaintiff's Symptom Testimony**

19        Plaintiff next contends that the ALJ failed to properly credit his own symptom

20   testimony.  To admit a claimant's subjective symptom testimony, the ALJ must engage in a

21   two-step analysis.  Batson v. Comm'r, 359 F.3d 1190, 1195-96 (9th Cir. 2004) (citing

22   Smolen, 80 F.3d at 1281-1182).  First, the claimant must provide objective medical

23   evidence of one or more impairments that could reasonably be expected to produce the

24   alleged symptoms.  Id.  Second, if an underlying causative impairment is established, and

25   there is no sign of malingering, "the ALJ can reject the claimant's testimony about the

26   severity of her symptoms only by offering specific, clear and convincing reasons for doing

27   so."  Id.  The ALJ must state specifically which symptom testimony is not credible and

28

facts in the record that support that conclusion.  Smolen, 80 F.3d at 1281 (citing Dodrill, 12 F.3d at 918).

A credibility assessment must be based on the entire case record, and should consider the following factors: (1) the claimant' daily activities; (2) the location, duration, frequency, and intensity of pain or symptoms; (3) factors that aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment other than medication; (6) measures other than treatment taken to relieve pain or symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991); SSR 96-7p, 1996 WL 374186 at *3; 20 C.F.R. § 404.1529.

The ALJ cannot reject allegations of pain solely on the basis that they are unsupported by the medical evidence.  Robbins, 466 F.3d at 884.  The ALJ may consider an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.  Bunnell, 947 F.2d at 346-47.  However, the adjudicator should not draw inferences from a failure to consistently seek or pursue medical treatment without first considering explanations the claimant may provide.  SSR 96-7p, 1996 WL 374186 at *7-8.  For example, a claimant may discontinue treatment on the advice of a medical professional that no further, effective treatment can be prescribed or undertaken.  Id.; see Miller v. Astrue, No. CV-08-3076-JPH, 2009 WL 4110989 at *13 (E.D. Wash. Nov. 23, 2009) (ALJ erred in considering plaintiff's discontinuance of medication in making the credibility determination where plaintiff reported sides effects and fear of side effects as the reason for discontinuing medication) (citing Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)).

Below, the ALJ determined that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ deemed

Plaintiff's testimony concerning the severity of the symptoms not "fully credible to the extent that [it is] inconsistent with the [RFC]."[5] (AR 20.)  The ALJ explained:

> The claimant reported that he is not taking any significant pain medication and not any medication consistent with the allegation of disabling pain.  The record does not indicate that the claimant requires any special accommodations to relieve his pain or other symptoms.  There is very little evidence of the claimant's alleged anxiety and depression.  The claimant stated that he was, at one time, taking anti-depressant medication but that he went of [sic] it because he felt it was not helping him.  The claimant also testified that he was seeing a counselor but that he had done so for only a few weeks.  The claimant's course of treatment with respect to his mental impairments has reflected a conservative approach.  He has not required any inpatient psychiatric hospitalization for his mental symptoms.

(AR 20.)

Plaintiff argues that the ALJ's credibility determination is erroneous.  (Pl.'s Mot. 18-19.)  He correctly points out that he has taken Gabapentin, Lyrica, and Nortriptyline, which are used to treat neuropathic pain, migraines, and depression, and that he was receiving medical treatment and counseling.  (Pl.'s Mot. at 18; AR 42-43, 175.)  In response, the Commissioner argues that the ALJ's credibility assessment was justified because Plaintiff stated that he did not intend to renew his prescriptions, and that the failure to follow a prescribed course of treatment is grounds for denying an application of benefits.  (Def.'s Mot. at 7.)  This contention lacks merit.  Witness testimony and medical records indicate that Plaintiff was prescribed various medications, including a prescription for chronic pain.  (AR 43, 175.)  Plaintiff testified that he took the medicines as prescribed, but had no refills.  (AR 42-44.)  Though Plaintiff stated that he did not like taking pills, he testified that the medications were ineffective, *even though he took all of the medication prescribed to him.* (AR 43-44.)

Without explanation, the ALJ simply discredited Plaintiff's testimony regarding his course of treatment.  The ALJ failed to cite evidence in the record responsive to Plaintiff's uncontroverted testimony that the medicines were ineffective.  No inference can be drawn

---

[5] The ALJ made no finding that Peck was malingering.  (AR 20.)

against Plaintiff based on his decision not to continue an ineffective course of treatment. Valadez v. Astrue, 2008 WL 4814913 at *4 (finding that, on remand, the ALJ should determine which medications were intended to alleviate the claimant's pain and what evidence there was that the medications were working).[6]  As such, the Court finds that the ALJ drew unsupported inferences from the medicinal treatment history, and ignored pertinent non-medicinal treatment.

Second, Plaintiff testified that he is unable to sit or stand for extended periods, and that such testimony does, in fact, reflect a need for special accommodation.  (Pl.'s Mot. at 18:16-24.)  While the ALJ denied that Plaintiff requires special accommodation, this is contradicted by Plaintiff's testimony, which is supported by lay witness testimony, medical opinion, and even the RFC.  Each of these sources confirms the need for a sit/stand option.

Third, Plaintiff asserts that his credibility cannot be undermined by a "conservative" course of treatment for his mental impairments.  (Pl's Mot. at 19:8-21.)  Plaintiff correctly points out that there is no treatment for his organic mental disorder because the damage to his brain is irreversible.  Id.  Accordingly, the lack of inpatient psychiatric hospitalization fails to address the credibility of Plaintiff's complaints because he is not, and did not claim to be, psychotic.  Id.  Plaintiff's mental impairments include limitations in memory, concentration and social functioning, which cannot be addressed through psychiatric treatment.

The ALJ correctly noted that there is little evidence of "anxiety or depression."  (AR 20.)  While the finding of a "conservative" course of treatment without inpatient hospitalization may be sufficient with regard to those complaints, the ALJ failed entirely to address Plaintiff's testimony regarding mental impairment in memory, concentration, and social functioning.

---

[6] It is worth noting that Plaintiff underwent surgery in 2007 to remove a rod from his leg in order to alleviate or lessen his pain.  (AR 18, 38.)  Thus, the record shows that Plaintiff was not resigned to his suffering, and made attempts to alleviate his pain.

The Court finds that the ALJ failed to specify incredible symptom testimony or to support the credibility determination with facts in the record.  The ALJ improperly assessed claimant's allegations regarding physical impairment, including chronic pain.  The ALJ also failed entirely to address Plaintiff's allegations of mental impairment concerning memory, concentration, and social functioning.  As such, Plaintiff's testimony cannot properly be discredited on the basis provided.  Thus, the Court finds reversible error with regard to the ALJ's determination of Peck's credibility.

### 3.    Consideration of Opinions by Medical Professionals

Next, Plaintiff avers that the ALJ failed to properly consider the testimony of examining physicians Dr. Bass and Dr. Cushman, medical expert Dr. Meadow, and state agency consultant Dr. Gross.  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (internal citation omitted).  At the administrative hearing level, the findings of State agency medical and psychological consultants or other program physicians or psychologists must be considered as expert opinion evidence by a nonexamining source.  SSR 96-6p, 1996 WL 374180 at *4; 20 C.F.R. § 404.1527(f)(2).  The ALJ may not ignore opinion evidence, and must explain in his decision the weight given to it.  Id.

Dr. Bass diagnosed Plaintiff with chronic headaches, among other things.  Plaintiff argues that the ALJ rejected that portion of Dr. Bass' diagnosis without reason.  (Pl.'s Mot. at 20.)  This contention is misplaced.  While Plaintiff characterizes the ALJ's RFC determination as a "rejection" of this diagnosis, the RFC is actually silent on the issue of headaches.  The RFC adopts the final findings of Dr. Bass, which are themselves based on his overall diagnoses.  (AR 229-30.)  Thus, the RFC cannot be said to reject a sub-diagnosis, when it embraces the findings based on that diagnosis.

The Court's conclusion, however, is different with respect to the medical opinions of Dr. Cushman, Dr. Meadow, and Dr. Gross, all of whom found that Plaintiff has moderate limitations in both social functioning and concentration.  (AR 54, 236, 250.)  Plaintiff

1    argues that the ALJ rejected those findings without reason.  (Pl.'s Mot. at 20.)  The Court

2    agrees.

3          In the mental RFC assessment, the ALJ noted that "the state agency consultant [Dr.

4    Gross] found that the claimant was capable of simple, repetitive tasks with limited public

5    contact."  (AR 21.)  The ALJ purportedly accepted that opinion as to the simple, repetitive

6    tasks, but rejected that opinion with regard to public contact.  (AR 21.)  The ALJ

7    summarized Dr. Cushman's social impairment findings, noting that "[a]lthough possible

8    difficulties getting along with others were indicated, these limitations are inconsistent with

9    the weight of the evidence, and, in any event, would not change the findings herein even if

10   accepted."  (AR 21.)  The flaw in this analysis is that the ALJ did not consider Dr.

11   Meadow's testimony at step 4 (i.e., RFC).  In support of his social functioning finding, the

12   ALJ stated, "the claimant has delivered pizzas for a substantial period of time and he

13   testified that he has no significant problems with the public."  (AR 21.)

14         As a threshold matter, it is immaterial whether or not a limitation would "change the

15   [disability] findings" of the ALJ.  The RFC assessment represents the most that the

16   claimant is able to do, and is a determination both separate and distinct from the ultimate

17   finding of disability.  The 5-step process is meant to ensure appropriate consideration of

18   each factor, and to facilitate subsequent review.  Thus, the impact on the ultimate outcome

19   is inapposite at this juncture.  Moreover, given that the VE explicitly testified that a

20   limitation of no more than occasional contact with co-workers and supervisors would

21   eliminate all work, the Court fails to see how the "social functioning" finding is of no

22   consequence to the ultimate disability determination.

23         In a medical source statement, Dr. Cushman stated explicitly that Plaintiff may

24   "have difficulties getting along with supervisors, coworkers, and the general public," and

25   require "special or additional supervision . . . to help him manage interpersonal

26   relationships in a work setting."  (AR 236.)  At the administrative hearing, Dr. Meadow

27   testified that Plaintiff has a "moderate" limitation in social functioning.  (AR 54.)  He

28   further testified that Plaintiff has "problems relating to people particularly with supervisors,

but even with the public." (AR 56.) Additionally, Dr. Gross found that Plaintiff has a "moderate" limitation in social functioning, explaining that this extends to the ability to "interact appropriately with the general public," and "accept instructions and respond appropriately to criticism from supervisors." (AR 254).

Dr. Cushman's findings regarding social functioning are supported by both Dr. Meadow and Dr. Gross. As such, the ALJ was required, and failed, to provide clear and convincing reasons for rejecting Dr. Cushman's opinion, as well as to discuss and explain the weight given to the opinions of the other doctors. Instead, the ALJ provides only a mischaracterization of Plaintiff's testimony regarding his work in pizza delivery. Plaintiff testified that he has had issues interacting with supervisors, co-workers, and the public. (AR 36, 38, 40.) Plaintiff further testified that he was able to engage in brief, limited exchanges of pizza for cash, and therefore did not have problems with customers at that particular job. (AR 35.) That single fact simply fails to overcome the uncontradicted opinions of three medical professionals, the claimant's own additional testimony, and the corroborating testimony of a lay witness.[7]

With regard to "concentration, persistence, or pace," the ALJ actually adopted the finding that Plaintiff has a "moderate" limitation. (AR 19.) However, the ALJ then contradicts that finding, stating, "the claimant has moderate difficulties, but the record as a whole, including his demonstrated abilities, establishes that he is able to perform at least simple, repetitive tasks equating to unskilled work, as found by the consultative psychological examiner and by the state agency." (AR 19.) While the ALJ purports to find a moderate limitation, he then denies Plaintiff the allowances commensurate with that finding in the RFC. However, the Court finds that the sum of the medical evidence does in fact support the documented impairment.

---

[7] Plaintiff asserts a separate claim that the ALJ's finding of only "*mild* to moderate" limitation in "social functioning" is not supported by substantial evidence. (Pl.'s Mot. at 15:19-17:28.) Because the Court now finds that the ALJ failed to properly credit medical opinions finding a "moderate" impairment, it is not now necessary to address that separate claim.

1    In the medical source statement, Dr. Cushman states that Plaintiff  "is capable of

2  performing simple and repetitive tasks of both a verbal and visual-motor nature."  (AR

3  236.)  However, that finding is not in conflict with the finding of a moderate impairment,

4  and Dr. Cushman's assessment is not, as the ALJ seems to assert, an unqualified

5  endorsement of Plaintiff's ability to perform unskilled work.  In fact, Dr. Cushman's

6  medical source statement contains a number of qualifications, including Plaintiff's

7  vulnerability to "easy fatigue," the need for "special supervision," and the need for

8  "assistance dealing with the usual stressors encountered in a competitive work

9  environment."  (AR 236.)  Dr. Cushman also found that Plaintiff's deficient performance in

10 "sustained attention and concentration" was clinically significant, and that Plaintiff has

11 "moderately impaired functioning due [to] slowness and error."  (AR 234-235.)

12   Dr. Meadow opined that Plaintiff is "moderately" impaired in "concentration,

13 persistence, or pace."  (AR 54.)  He explained that Plaintiff is capable of performing a

14 "simple job (INAUDIBLE) under the right circumstances," but stressed that it would "have

15 to be very much under the right circumstances."  (AR 54.)  Additionally, Dr. Gross

16 recorded a "moderate" limitation in "concentration, persistence, or pace," explaining that

17 this extends to Plaintiff's ability to "carry out detailed instructions," "sustain an ordinary

18 routine without special supervision," and "complete a normal workday and workweek

19 without interruptions from psychologically based symptoms and to perform at a consistent

20 pace without an unreasonable number and length of rest periods."  (AR 253-254).

21   Dr. Cushman's findings are supported by both Dr. Meadow and Dr. Gross.  As

22 such, the ALJ was required, and failed, to provide clear and convincing reasons for

23 rejecting Dr. Cushman's opinion, or to discuss and weigh the opinions of the other doctors.

24 In fact, the ALJ at step 3 adopts the finding that Plaintiff has a moderate limitation in

25 "concentration, persistence, or pace," but then attempts to reinterpret its implication in the

26 RFC.  As such, it cannot be said that the ALJ provided clear and convincing reasons for

27 rejecting that same finding.  Thus, the Court finds reversible error in the ALJ's failure to

28

1  consider the opinions of medical professionals regarding both "social functioning" and

2  "concentration, persistence, or pace."

3  **C.**    **RESIDUAL FUNCTIONAL CAPACITY**

4  Pursuant to 20 C.F.R. § 404.1520a(b)-(d), the ALJ must decide whether the claimant

5  has a medically determinable mental impairment, and then rate the degree of functional

6  limitation resulting from any impairment.  The degree of limitation is rated in four broad

7  functional areas: (1) activities of daily living; (2) social functioning; (3) concentration,

8  persistence, or pace; and (4) episodes of decompensation.  Id.  Functional areas (1) through

9  (3) are rated on the scale: none, mild, moderate, marked, and extreme; functional area (4) is

10  rated on the scale: none, one or two, three, four or more.  Id.  The ALJ then determines the

11  severity of the impairment.  Id.  If a "severe" impairment exists, the ALJ determines

12  whether the impairment meets or is equivalent to a listed mental disorder, and if it does not,

13  assesses the claimant's mental residual functional capacity.  Id.  As noted, residual

14  functional capacity is "the most [the claimant] can still do despite [his] limitations."  20

15  C.F.R. § 404.1545(a).  Physical and mental limitations are established by the claimant's

16  impairments and any related symptoms.  Id.  In an RFC assessment, the ALJ considers all

17  of the claimant's medically determinable impairments, including those that are not severe.

18  Id.

19  Pursuant to 20 C.F.R. § 404.1520a(e), the ALJ must document the application of the

20  above technique in the written decision, and must incorporate the pertinent findings and

21  conclusions based thereon.  Id.  The decision must include not only an RFC, but also a

22  specific finding as to the degree of limitation in each of the four functional areas specified.

23  Id.

24  **1.**    **Documented Application of the Proper Technique**

25  Plaintiff argues that the ALJ failed to comply with agency regulations governing the

26  evaluation of mental impairments, specifically the documentation requirements at the

27  administrative hearing level.  (Pl.'s Mot. at 11:1-12:14.)  The Court disagrees.

28

The ALJ used the sequential technique set forth in 20 C.F.R. § 404.1520a to evaluate Plaintiff's mental impairments, and properly documented the findings in his written decision.  (AR 19-20.)  The ALJ rated Plaintiff's functional limitations in each of the four specified areas, finding: "moderate" limitation in both "activities of daily living" and "concentration, persistence, or pace"; "no more than mild to moderate" limitation in "social functioning"; and no episodes of decompensation.  (AR 19.)  The ALJ noted that Plaintiff's impairments were "severe," but not equivalent to a listed disorder.  (AR 17-18.)  The ALJ then determined the claimant's RFC, finding Plaintiff is "able to perform simple, repetitive tasks equating to unskilled work."  (AR 20-21.)  While Plaintiff argues that the RFC is inconsistent with the ratings specified in the four functional limitation areas, that error represents, not a failure to apply the technique described in §404.1520a, but rather a failure to properly weigh the findings derived therein.  Thus, the Court finds no reversible error regarding the ALJ's documentation of the appropriate technique.

### 2.    The RFC Is Inconsistent with the Documented Impairments

Plaintiff further argues that the ALJ's RFC assessment is inconsistent with the finding of severe mental impairments, and therefore, the RFC is not supported by substantial evidence and is based on legal error.  (Pl.'s Mot. at 12:15-14:14.)  The Court agrees.

In order for a "severe" mental impairment to be reflected in a mental RFC assessment, that assessment must document a significant limitation in the claimant's ability to do basic work activities.  Pursuant to 20 C.F.R. § 404.1521, an impairment is "not severe if it does not significantly limit" a claimant's physical or mental ability "to do basic work activities."

Pursuant to SSR 85-15, 1985 WL 56857 at *4, the basic mental demands of "competitive, remunerative, unskilled work include the abilities (on a sustained basis) to: understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  A substantial loss in one's ability to meet any of these basic work-related

activities would severely limit the potential occupational base and justify a finding of disability.  Id.

The ALJ determined Plaintiff has "severe" limitations in mental functioning.  (AR 19.)  Those limitations were rated in four functional areas.  (AR 19.)  Plaintiff argues, however, that the RFC does not reflect those findings, and fails to indicate documented limitations, whether rising to the level of disability or not, in Plaintiff's mental functioning.  (Pl.'s Mot. at 14:9-14.)

Plaintiff notes that "unskilled work" is an occupational skill level, not a limitation substantiating the RFC assessment.  (Pl.'s Mot. at 12:20-13:6.)  "Unskilled" represents one of three work skill levels defined by the specific vocational preparation ("SVP") time required to learn the job.  "Unskilled work" is defined as work where "a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed."  20 C.F.R. § 404.1568(a); SSR 00-4p, 2000 WL 1898704 at *3.  The Dictionary of Occupational Titles ("DOT") provides SVP8 times; unskilled work corresponds to an SVP of 1 to 2.  Id.

As explained above, even unskilled work has basic mental demands.  Thus, if a claimant is unable to meet those basic demands, he is deemed disabled.  "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job.  A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job."  SSR 85-15, 1985 WL 56857 at *6.  Fundamentally, an occupational training time does not equate to a finding of one's ability to perform a job once trained, given his particular mental limitations.

---

[8] SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in the specific job-worker situation.  Employment and Training Admin., U.S. Dep't of Labor, Dictionary of Occupational Titles, (4th ed. rev. 1991), page 1009.  SVP level 1 is defined as requiring a short demonstration only.  SVP level 2 is defined as requiring anything beyond a short demonstration up to and including one month.

The ALJ determined that Plaintiff has severe mental functioning impairments, as evidenced by the finding of moderate limitations in "concentration, persistence, or pace" and "activities of daily living," and the mild to moderate limitation in "social functioning." Pursuant to § 404.1545, the RFC must include all impairments. Those impairments should be converted into specific limitations in Plaintiff's ability to perform the necessary functions of unskilled work. As such, the RFC describes the most the claimant can do despite impairment.

The RFC at issue states that Plaintiff can perform only those tasks that equate to unskilled work. Yet, medical professionals noted Plaintiff's difficulty, due to his limitations, with the basic mental demands of unskilled work. Plaintiff's RFC fails to include a documented limitation in "concentration, persistence, or pace." The RFC makes no finding as to Plaintiff's ability to perform on a sustained basis, or at a certain productivity level. The finding that Plaintiff is able to perform certain unskilled tasks, does not fully address his employability, given that certain demands will be made with respect to the time and manner in which those tasks are executed. Similarly, the RFC does not mention a limitation in "social functioning," even in the mild to moderate range. Again, while Plaintiff may be capable of performing unskilled tasks and even follow verbal instructions, that finding does not address his ability to appropriately receive instructions or criticism from a supervisor. Therefore, the Court concurs in the assessment that the limitation to "unskilled work" does not adequately capture Plaintiff's mental RFC.

The RFC is inconsistent with Plaintiff's documented limitations. As such, the Court finds that the RFC is not supported by substantial evidence, and is based on reversible legal error.

### D.   VOCATIONAL HYPOTHETICAL TO THE VE

#### 1.   The VE Testimony Is Not Procedurally Defective

Plaintiff argues that the ALJ was required but failed to ask the VE whether her testimony was consistent with the DOT (i.e., Dictionary of Occupational Titles). (Pl.'s Mot. at 25.) Plaintiff asserts that the ALJ's failure to make this inquiry is reversible error.

1  Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  In Massachi, the Ninth Circuit

2  construed SSR 00-4p as creating an affirmative duty on the part of the ALJ to inquire

3  whether the VE's testimony conflicts with the DOT.  Id. at 1153.  Plaintiff asserts, and the

4  Commissioner does not dispute, that the ALJ failed to make such an inquiry.  (Pl.'s Mot. at

5  25.)  However, "[t]his procedural error could have been harmless, were there no conflict, or

6  if the vocational expert had provided sufficient support for her conclusion so as to justify

7  any potential conflicts."  Massachi, 486 F.3d at 1154 n.19 (finding reversible error where

8  there was "an apparent conflict with no basis for the vocational expert's deviation").  No

9  evidence of conflict between the DOT and the VE has been proffered by Plaintiff in this

10 case.  As such, the Court finds the ALJ's error to be harmless.

### 2.   Inquiry Regarding Plaintiff's Limitations

12  Plaintiff argues that the ALJ's hypothetical to the VE did not accurately reflect his

13 full limitations.  (Pl.'s Mot. at 14-15.)  The testimony of the VE may only be relied upon if

14 "the questions posed by the ALJ include all of the claimant's functional limitations, both

15 physical and mental."  Flores v. Shalala, 49 F.3d 562, 570-571 (9th Cir. 1995).

16 Specifically, the vocational hypothetical should account for documented limitations in

17 "concentration, persistence, or pace."  Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir.

18 2002).  "If the assumptions in the hypothetical are not supported by the record, the

19 vocational expert's opinion that a claimant is capable of working has no evidentiary value."

20 Russell v. Sullivan, 930 F.2d 1443, 1455 (9th Cir. 1991).

21  Here, the ALJ's hypothetical did not account for Plaintiff's deficits in "social

22 functioning" or "concentration, persistence, or pace" nor did it incorporate limitations

23 supported by medical evidence and, in fact, endorsed in the ALJ's own findings at step 3.

24 (AR 19.)  This omission is significant, as demonstrated by the VE's testimony.  In response

25 to a modified hypothetical, the VE testified imposing a limitation of only occasional contact

26 with co-workers and supervisors would "eliminate all jobs."  (AR 61-62.)  In response to a

27 hypothetical posed by Plaintiff' counsel, the VE also testified "concentration, persistence,

28

1  and pace on [an] unskilled job would not allow the person to complete the requirements of

2  the job," which thereby would all eliminate or severely limit potential work.  (AR 63.)

3      The Commissioner fails to respond directly to Plaintiff's argument, but instead,

4  argues that the limitations contained in the ALJ's hypothetical are supported by the record,

5  and therefore, it was permissible for the ALJ to rely on the VE's testimony that "Appellant

6  could perform her [sic] past relevant work."  (Def.'s Mot. at 5.)  The flaw in this argument

7  is that the ALJ did *not* find that Plaintiff could perform past relevant work.  To the contrary,

8  the ALJ found that "the claimant is unable to perform past relevant work."  (AR 21.)

9  Setting aside the Commissioner's misstatement of the record, his response ultimately

10  misses the point.  Plaintiff is not alleging that the limitations in the hypothetical were

11  unsupported in the record.  Rather, he is arguing that the hypothetical *did not contain all of*

12  *the restrictions supported by the record*.

13      The ALJ found, based on the medical opinions provided, that Plaintiff had moderate

14  limitations.  Thus, the ALJ had no clear or convincing reason for omitting those

15  impairments from his inquiry; i.e., limitations in both "social functioning" and

16  "concentration, persistence, or pace" should have formed part of the ALJ's questions to the

17  VE.  The hypothetical relied upon by the ALJ did not include all documented impairments,

18  and therefore, the VE's statement that the claimant is capable of working lacks evidentiary

19  value.  The Court finds that the ALJ, having relied upon a flawed vocational hypothetical,

20  committed reversible error in determining that the Plaintiff is not disabled.

21      **E.      REMEDY**

22      As relief, Plaintiff requests that the Court remand for an immediate award of benefits

23  under Lester, 81 F.3d 821, and Varney v. Sec. of HHS, 859 F.2d 1396 (9th Cir. 1988).

24  (Pl.'s Mot. at 25:16-22.)  The Commissioner does not respond directly to this point.

25      Where the ALJ fails to provide an adequate reason for discrediting the symptom

26  testimony of the claimant or rejecting the opinion of an examining physician, that testimony

27  or opinion is credited as a matter of law.  Lester, 81 F.3d at 834 (citing Varney, 859 F.2d at

28  1401; Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989)).  The Court finds that the

ALJ erroneously discredited the claimant's testimony of difficulties with memory, concentration and social functioning.  The Court further finds that the ALJ improperly rejected medical opinions finding Plaintiff "moderately" impaired in both "social functioning" and "concentration, persistence, or pace."  As such, the symptom testimony and medical opinions are credited as true.

Moreover, at step 4, the ALJ failed to credit the impairments he himself documented in step 3.  In determining the severity of Plaintiff's impairments, the ALJ made written findings that Plaintiff had moderate impairments, including one in "concentration, persistence, or pace."  Yet, in determining Plaintiff's capacity to work, the ALJ made an inconsistent RFC determination—one that failed to encompass any limitation associated with Plaintiff's combined impairments.  The Court finds that the impairments documented by the ALJ at step 3 should also be credited as a matter of law.

"Where, as here, the record has been thoroughly developed, it is within [the court's] discretion to award benefits without remanding the case for additional evidence."  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Based on the findings of this Court, there is no need to further develop the record.  The evidence, given the effect required by law, demonstrates that Plaintiff is disabled.  The VE explicitly testified that the combination of impairments documented by the ALJ at step 3 would eliminate all unskilled work.  No purpose would be served by remanding for further proceedings to correct the ALJ's erroneous RFC determination.  Thus, the Court REVERSES the disability determination and REMANDS for immediate award of benefits.

//

//

//

//

//

///

1

**IV.     CONCLUSION**

2

For the reasons stated above,

3

IT IS HEREBY ORDERED THAT: Plaintiff's motion for summary judgment is

4

GRANTED and the Commissioner's cross-motion for summary judgment is DENIED.  The

5

decision of the ALJ is REVERSED and the action shall be REMANDED for the immediate

6

award of benefits.

7

IT IS SO ORDERED.

8

9

Dated: September 24, 2010

10

SAUNDRA BROWN ARMSTRONG
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28